# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID HINZ** ) | |
|         *Plaintiff* ) | |
| **vs.** ) | |
| ) | |
| **RICOH USA, INC.** ) | Case No: 2:21-cv-2052 |
| *Serve Registered Agent*: ) | |
|     The Corporation Company ) | **JURY TRIAL DEMANDED** |
|     112 SW 7th Street, Suite 3C ) | |
|     Topeka, KS 66603 ) | |
| ) | |
| **DELUXE CORPORATION** ) | |
| *Serve Registered Agent*: ) | |
|     Corporation Service Company ) | |
|     2900 SW Wanamaker Drive, Suite 204 ) | |
|     Topeka, KS 66614 ) | |
|         *Defendants* ) | |

## COMPLAINT

Plaintiff David Hinz alleges the following Complaint against Ricoh USA, Inc. ("Ricoh") and Deluxe Corporation ("Deluxe"), collectively "Defendants."

## NATURE OF THE CLAIM

1. This is an employment discrimination case alleging violations of the Americans with Disabilities Act and Kansas common law.

2. In approximately January 2015, Plaintiff, through direct employment with Ricoh, was assigned to work at a facility controlled exclusively by Deluxe. In July 2020, Plaintiff learned of a positive COVID-19 case inside Deluxe's facility. Plaintiff approached Deluxe's management employee, Chris Matheny, to ask about their mitigation efforts and explained his concern with potential exposure because his wife was high risk, disabled, and awaiting a lung transplant. In response, Deluxe made disparaging and defamatory remarks about Plaintiff to Ricoh and demanded the termination of his employment within its facility, thereby discriminating against

1

him and interfering with his expectation of continued employment and future contractual expectations.

3. Later that day, Ricoh told Plaintiff to leave Deluxe's facility. After more than five years of working inside Deluxe's facility, Deluxe excluded Plaintiff from the premises because it learned of his association with his disabled wife.

4. Plaintiff reported to Ricoh his good faith belief that he was being discriminated against. In response, Ricoh withheld future employment opportunities from Plaintiff and terminated his employment permanently.

5. By these actions, Defendants violated the Americans with Disabilities Act and the common law of Kansas, causing Plaintiff to suffer damages.

## PARTIES

6. **PLAINTIFF DAVID HINZ** is a male citizen of the USA domiciled in Kansas.

7. Plaintiff was employed by Ricoh from July 2004 until August 2020.

8. From July 2004 until August 2020, Plaintiff was an "employee" of Ricoh as that term is defined by 42 USC § 12111(4) because he was employed by Ricoh, who is an "employer."

9. In or about January 2015, Ricoh assigned Plaintiff to work at a facility exclusively controlled by Deluxe. Plaintiff's job title was "Technology Services Advanced CPI I, TS Field Support." Plaintiff performed that job until Deluxe excluded him from its facility on or about July 3, 2020.

10. The entire time Plaintiff held the job Technology Services Advanced CPI I, TS Field Support, he was a "qualified individual" as defined by 42 USC § 12111(8) because he could perform the essential functions of that employment position the entire time.

11. During July and August 2020, Plaintiff's wife was a person with a "disability" as defined by 42 USC § 12102(1) because she had a physical impairment that substantially limited one or more major life activity in that she has idiopathic pulmonary fibrosis, a disease that causes damage and scarring to the lungs, had undergone a surgical procedure to have a part of her lung removed or re-sectioned, and needed a lung transplant.

12. Plaintiff's wife had a "disability" when Deluxe terminated Plaintiff's employment as Technology Services Advanced CPI I, TS Field Support and excluded Plaintiff from its facility.

13. Deluxe knew that Plaintiff was married to an individual with a "disability" when it terminated Plaintiff's employment as Technology Services Advanced CPI I, TS Field Support and excluded Plaintiff from its facility.

14. Plaintiff's wife had a "disability" when Ricoh withheld employment opportunities from Plaintiff and terminated his employment permanently.

15. Ricoh knew that Plaintiff was married to an individual with a "disability" when it withheld employment opportunities from Plaintiff and terminated his employment.

16. **DEFENDANT RICOH USA, INC.** ("Ricoh") is a corporation.

17. Ricoh is a citizen of Ohio, the state where it was incorporated.

18. Ricoh is a citizen of Pennsylvania, the state where it maintains its principal place of business.

19. Ricoh was authorized and registered to do business in Kansas (but is currently delinquent in its filing despite continuing to do business here).

20. Ricoh operates a business at 8050 Marshall Drive, Ste. 150, Overland Park, Kansas, 66214.

21. Ricoh employed Plaintiff from 2005 until August 2020.

22. Ricoh employed Plaintiff to work in Kansas.

23. Ricoh terminated Plaintiff's employment in Kansas.

24. From 2005 to August 2020, Ricoh was an "employer" as defined by 42 USC § 12111(5) because it engages in an industry affecting commerce and had 15 or more employees.

25. From 2005 to August 2020, Ricoh was a "covered entity" as defined by 42 USC § 12111(2) because it was an "employer."

26. From 2005 to August 2020, Ricoh was a "person" as defined by 42 USC § 12111(7) because it was a "corporation."

27. **DEFENDANT DELUXE CORPORATION** ("Deluxe") is a corporation.

28. Deluxe is a citizen of Minnesota, the state where it was incorporated and maintains its principal place of business.

29. Deluxe operates a business at 16505 West 113th Street, Lenexa, Kansas, 66219.

30. Deluxe has exclusive control over who it allows to enter its facility in Lenexa, Kansas versus who it chooses to exclude from its facility in Lenexa, Kansas.

31. From January 2015 until July 3, 2020, Deluxe allowed Plaintiff to enter its facility, to perform labor inside of its facility, and to perform labor for Deluxe that benefitted the business Deluxe was engaged in at the facility in Lenexa, Kansas.

32. From January 2015 until July 2020, Deluxe was an "employer" as defined by 42 USC § 12111(5) because it engaged in an industry affecting commerce and had 15 or more employees.

33. From January 2015 until July 2020, Deluxe was a "covered entity" as defined by 42 USC § 12111(2) because it was an "employer."

4

34. From January 2015 until July 2020, Deluxe was a "person" as defined by 42 USC § 12111(7) because it was a "corporation."

## SUBJECT MATTER JURISDICTION

35. This Court has original subject matter jurisdiction over this case pursuant to 28 USC § 1331 because Plaintiff makes claims under federal law, *to wit:* the Americans with Disabilities Act, 42 USC §§12101 – 12213 ("ADA").

36. This Court has original subject matter jurisdiction over this case pursuant to 28 USC § 1332 because Plaintiff is a citizen of Kansas, and Defendants are citizens of Minnesota, Ohio, and Pennsylvania and there is more than $75,000 in controversy.

## VENUE

37. Venue is proper in this District pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PROCEDURES

38. On Aug. 21, 2020, Plaintiff filed a charge of discrimination against Deluxe with the U.S. Equal Employment Opportunity Commission (EEOC) alleging Deluxe had violated the ADA by discriminating against him. The EEOC assigned this charge the Charge Number 563-2020-02807, which is attached hereto and incorporated by reference as **EXHIBIT A.**

39. Deluxe received notice of Charge Number 562-2020-02807 from the EEOC.

40. Deluxe responded to Charge Number 562-2020-02807 by submitting a position statement and documents with the EEOC.

41. On Oct. 5, 2020, Plaintiff filed a charge of discrimination against Deluxe with the U.S. Equal Employment Opportunity Commission (EEOC) alleging Ricoh had violated the ADA

5

by discriminating against him. The EEOC assigned this charge the Charge Number 563-2021-00038, which is attached hereto and incorporated by reference as **EXHIBIT B.**

42. Ricoh received notice of Charge Number 562-2021-00038 from the EEOC.

43. Ricoh responded to Charge Number 562-2021-00038 by submitting a position statement and documents with the EEOC.

44. On Nov. 2, 2020, the EEOC issued Plaintiff his Notice of Right to Sue pursuant to the ADA concerning Charge No. 563-2020-02807, authorizing him to bring a civil action against Deluxe within 90 days. A copy of that Notice of Right to Sue is attached hereto as **EXHIBIT C** and incorporated by reference.

45. Ninety days from Nov. 2, 2020, is Jan. 31, 2021.

46. This action was filed within 90 days of Nov. 2, 2020.

47. On Dec. 7, 2020, the EEOC issued Plaintiff his Notice of Right to Sue pursuant to the ADA concerning Charge No. 563-2021-00038, authorizing him to bring a civil action against Ricoh within 90 days. A copy of that Notice of Right to Sue is attached hereto as **EXHIBIT D** and incorporated by reference.

48. Ninety days from Dec. 7, 2020, is March 7, 2021.

49. This action has been filed within 90 days of March 7, 2021.

## **FACTS**

50. During July 2004, Plaintiff became an employee of a company that was purchased by Ricoh in 2005. When Ricoh purchased the company, Plaintiff became an employee of Ricoh.

51. In or about January 2015, Ricoh offered Plaintiff what he understood was a promotion and assigned Plaintiff to work for Deluxe at its facility in Lenexa, Kansas.

52. In or about January 2015, Plaintiff began work as a Technology Services Advanced CPI I, TS Field Support exclusively for Deluxe at its facility in Lenexa, Kansas.

53. In mid-June 2020, Plaintiff took time away from work to accompany his wife to the Barnes-Jewish Hospital to be assessed for a lung transplant.

54. Plaintiff's wife suffers from a lung disease with an unknown origin that has caused damage to her lungs and substantially limits her ability to breath, exercise, and withstand viruses that attack the lungs.

55. Ricoh was aware that Plaintiff's time away from work in mid-June 2020 was related to his wife's disability.

56. Deluxe was aware that Plaintiff's time away from work in mid-June 2020 was related to his wife's disability.

57. On July 3, 2020, at approximately 2:45 p.m., Deluxe's management employee, Chris Matheny, held a mandatory meeting which Plaintiff was required to attend.

58. At the July 3, 2020 meeting, Matheny informed those present, including Plaintiff, that an employee at facility had tested positive for COVID-19.

59. At the July 3, 2020 meeting, Matheny informed those present, including Plaintiff, that the employee who tested positive for COVID-19 worked in the same area as Plaintiff.

60. Just weeks before the July 3, 2020 meeting, Deluxe had held a similar meeting in which it informed those present, including Plaintiff, that a different employee within the facility had tested positive for COVID-19.

61. On July 3, 2020, Matheny told the employees present that Deluxe would be maintaining the same preventative measures that it had in place before learning of the most recent

7

COVID-19 positive case; namely, a mandatory single point of entry, mandatory masks, social distancing, mandatory temperature checks, and disinfecting gel.

62. On July 3, 2020, Plaintiff asked Matheny whether COVID-19 testing would be provided.

63. On July 3, 2020, Matheny said Deluxe would not provide testing.

64. On July 3, 2020, Plaintiff asked Matheny why Deluxe chose not to provide testing.

65. On July 3, 2020, Matheny said employees could take it upon themselves to get tested for COVID-19.

66. On July 3, 2020, Plaintiff explained to Matheny that he was concerned about exposure to COVID-19 because his wife is in a high-risk category, he and his wife had recently returned from a lung transplant facility, his wife is on a lung transplant list, that he could not take the virus home, and that the virus could kill his wife because of her disability.

67. After the July 3, 2020 meeting ended, Plaintiff returned to his workstation.

68. On July 3, 2020, after returning to workstation and attending to his work, Plaintiff was contacted after 4:00 PM and was told to go home.

69. On July 3, 2020, Plaintiff believed he was being sent home to accommodate his concerns regarding his wife.

70. Unbeknownst to Plaintiff, on July 3, 2020, Deluxe informed Ricoh that Plaintiff "stated numerous times that Deluxe should require everyone to take a covid test." This was a false statement about Plaintiff.

71. On July 3, 2020, Deluxe informed Ricoh that Plaintiff "just blurted out 'you're kidding yourself; you know this wrong and Deluxe needs to just do this." This was a false statement about Plaintiff.

72. On July 3, 2020, Deluxe informed Ricoh that Plaintiff said, "This is on Deluxe and this will come around to bite you and you know it." This was a false statement about Plaintiff.

73. On July 3, 2020, Deluxe informed Ricoh that Plaintiff said, "This is on Deluxe," then "threw up his arms shaking his head, turned around and walked off" while saying "this is going to come back around to bite you and you know it." This was a false statement.

74. On July 3, 2020, Deluxe informed Ricoh that Plaintiff "will not be coming back" and Deluxe deactivated Plaintiff's entrance badge. This was Plaintiff's last day of work for Defendants.

75. On about Sunday, July 5, 2020, Plaintiff was told to take a sick day for Monday, July 6, 2020, and not to return to work because he could not get into the building anyway as his badge had been turned off by Deluxe.

76. On Monday, July 6, 2020, Plaintiff informed "Rusty," a supervisor, that he was getting concerned and did not understand what was happening.

77. Later that day, Plaintiff was informed by Ricoh that Deluxe had ordered that Plaintiff be excluded from their facility and that his work for Deluxe was over, that he was being placed on a 30-day administrative leave and would then be fired by Ricoh.

78. On July 10, 2020, Plaintiff received a letter from Ricoh stating that Deluxe requested Plaintiff's removal and that if Plaintiff did not find another job within Ricoh in 30 days then his employment with Ricoh would be terminated.

79. Plaintiff made complaints to Ricoh of discrimination based on his association with his disabled wife.

80. Plaintiff applied for an open position within Ricoh, but Ricoh refused Plaintiff the position.

81. Prior to Deluxe's removal of Plaintiff, Ricoh had informed Plaintiff that it was considering offering him another job at facility known as Broadridge.

82. After Plaintiff's complaints of discrimination, Ricoh told him the Broadridge position was no longer available to him.

83. On Aug. 10, 2020, Ricoh terminated Plaintiff's employment permanently.

## JOINT EMPLOYMENT

84. Both Defendants were joint employers of Plaintiff during the time he held the job of Technology Services Advanced CPI I, TS Field Support and worked inside Deluxe's facility in Lenexa, Kansas.

85. During the time Plaintiff worked as Technology Services Advanced CPI I, TS Field Support inside Deluxe's facility in Lenexa, Kansas, Ricoh:

   a. Paid Plaintiff wages

   b. Issued Plaintiff income tax forms

   c. Communicated with Plaintiff about the status of his employment and placement at the facility

   d. Terminated Plaintiff's employment

86. During the time Plaintiff worked as Technology Services Advanced CPI I, TS Field Support inside Deluxe's facility in Lenexa, Kansas, Deluxe:

   a. Exclusively controlled the facility in which Plaintiff worked

   b. Set the workplace rules in the facility where Plaintiff worked

   c. Oversaw and implemented the safety policies in the facility where Plaintiff worked

d.     Was obligated to provide a safe working environment in the facility in which Plaintiff worked

e.     Had the power to exclude any individual from entering the facility where Plaintiff worked

f.     Made the decision to exclude Plaintiff from its facility and never let Plaintiff return to work there

g.     Had the power to terminate an employee, including Plaintiff, by demanding the termination

h.     Had the power to terminate an employee, including Plaintiff, by providing negative assessments of work or conduct

i.     Had the power to pick which individuals would be allowed to work in its facility, on its machines, or carry out work for it

j.     Set Plaintiff's schedule

k.     Controlled Plaintiff's vacation time

l.     Controlled Plaintiff's hours

m.     Prohibited extended COVID-19 furlough for Plaintiff

n.     Provided employee evaluations for Plaintiff

o.     Controlled Plaintiff's daily tasks

p.     Determined Plaintiff's training and work assignments

q.     Controlled Plaintiff's work report procedures

r.     Directed Plaintiff's completion of work orders

s.     Set Plaintiff's procedures for submitting work orders or service orders

t.     Set mandatory meetings for Plaintiff

u. Dictated what Plaintiff could and could not wear

v. Set Plaintiff's "tag-out" policies concerning equipment serviced by Plaintiff

w. Set the policies and practices for Plaintiff concerning preventive maintenance on machines

x. Set the time-schedule by which Plaintiff was required to perform preventive maintenance on machines

y. Set the time-schedule by which Plaintiff was required to perform "deep cleans" on machines

z. Required weekend work for Plaintiff

aa. Required overtime work for Plaintiff

bb. Dictated Plaintiff's procedures for plant modernization

cc. Dictated the certifications Plaintiff was and was not required to hold

dd. Set the procedures and policies for Plaintiff with respect to personal protective equipment, i.e., when, where, and how to wear eye plugs, glasses, and gloves

ee. Provided daily feedback or evaluation of Plaintiff's performance

ff. Supervised Plaintiff's work

gg. Assigned Plaintiff's workspace and tools

hh. Had control over plant safety procedures, including mandatory temperature checks and mandatory masks

ii. Evaluated Plaintiff's quality of work for "acceptance" or "rejection"

jj. Had partial control over Plaintiff's bonus schedules

kk. Controlled Plaintiff's attendance records

ll. Controlled Plaintiff's project/work records

  mm. Controlled Plaintiff's machine service, cleaning, and maintenance records

## COUNT I
### Americans with Disabilities Act
### Discrimination Because of Relationship or Association
### 42 USC § 12112
### (against Deluxe)

87. Plaintiff incorporates by reference every other allegation in this Complaint.

88. Deluxe jointly employed Plaintiff during the time Plaintiff was employed to work at Deluxe's facility in Lenexa, Kansas.

89. Deluxe was a "covered entity" as used in 42 USC § 12112(a).

90. Plaintiff was a "qualified individual" as used in 42 USC § 12112(a).

91. Plaintiff's wife had a "disability."

92. Deluxe knew Plaintiff's wife had a "disability."

93. On July 3, 2020, Deluxe excluded Plaintiff from its facility, preventing him from performing labor to earn wages, because of Plaintiff's relationship and association with his wife, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

94. On July 3, 2020, Deluxe terminated Plaintiff's job inside Deluxe's facility in Lenexa, Kansas because of Plaintiff's relationship and association with his wife, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

95. Deluxe directly and proximately caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and frustration.

96. Deluxe's conduct against Plaintiff was malicious or reckless to Plaintiff's federally protected rights. Deluxe is therefore liable for punitive damages in an amount sufficient to punish Deluxe and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Deluxe on Count I of his Complaint, for a finding that Deluxe violated 42 USC § 12112, for compensatory and punitive damages;

equitable relief; costs; attorneys' and experts' fees provided; and other relief the Court deems fair and reasonable.

## COUNT II
### Americans with Disabilities Act
### Discrimination Because of Relationship or Association
### 42 USC § 12112
### (against Ricoh)

97. Plaintiff incorporates by reference every other allegation in this Complaint.

98. Ricoh employed Plaintiff from 2005 until August 2020.

99. Ricoh was a "covered entity" as used in 42 USC § 12112(a).

100. Plaintiff was a "qualified individual" as used in 42 USC § 12112(a).

101. Plaintiff's wife had a "disability."

102. Ricoh knew Plaintiff's wife had a "disability."

103. On July 3, 2020, Ricoh excluded Plaintiff from Deluxe's facility, preventing him from performing labor to earn wages, because of Plaintiff's relationship and association with his wife, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

104. On July 3, 2020, Ricoh terminated Plaintiff's job inside Deluxe's facility in Lenexa, Kansas because of Plaintiff's relationship and association with his wife, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

105. During August 2020, Ricoh permanently terminated Plaintiff's employment. because of Plaintiff's relationship and association with his wife, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

106. From July 3, 2020 until the permanent termination of Plaintiff's employment, Ricoh withheld employment opportunities that were available and for which Plaintiff was qualified, thereby violating 42 USC § 12112(a) as described in 42 USC § 12112(b)(4).

107. Ricoh directly and proximately caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and frustration.

108. Ricoh's conduct against Plaintiff was malicious or reckless to Plaintiff's federally protected rights. Deluxe is therefore liable for punitive damages in an amount sufficient to punish Deluxe and to deter it and other employers from engaging in similar conduct.

## COUNT III
## Americans with Disabilities Act
## Retaliation
## 42 USC § 12203(a)
## (Against Ricoh)

109. Plaintiff incorporates by reference every other allegation in this Complaint.

110. Ricoh jointly employed Plaintiff during the time Plaintiff was employed to work at Deluxe's facility in Lenexa, Kansas.

111. Ricoh was a "person" as that term is used in 42 USC § 12203(a).

112. Plaintiff was an "individual" as that term is used in 42 USC § 12203(a).

113. Plaintiff "opposed an[] act or practice made unlawful" as mentioned in 42 USC § 12203(a) by reporting to Ricoh his reasonable, good faith belief that Deluxe and Ricoh excluding him from its facility was unlawful discrimination based on Plaintiff's association with his disabled wife, thereby engaging in protected activity.

114. In response to Plaintiff's protected activity, Ricoh refused Plaintiff employment opportunities that were available and for which he was qualified.

115. In response to Plaintiff's protected activity, Ricoh permanently terminated Plaintiff's employment.

116. Ricoh's conduct was materially adverse and would reasonably dissuade an individual from engaging in protected activity.

117. Ricoh directly and proximately caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and frustration.

118. Ricoh directly and proximately caused damage to Plaintiff's employment relationship with Ricoh.

119. Ricoh's conduct against Plaintiff was malicious or reckless to Plaintiff's federally protected rights. Deluxe is therefore liable for punitive damages in an amount sufficient to punish Deluxe and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Ricoh on Count III of his Complaint, for a finding that Ricoh violated 42 U.S.C. § 12203(a); for compensatory and punitive damages; equitable relief; costs; attorneys' and experts' fees provided; and other relief the Court deems fair and reasonable.

## COUNT IV
### Wrongful Discharge/Breach of Implied-in-Fact Contract of Employment
### Kansas Common Law
### (Against Ricoh)

120. Plaintiff incorporates by reference every other allegation in this Complaint.

121. Ricoh's conduct toward Plaintiff created an expectation of continued and future employment with Ricoh unless Plaintiff engaged in conduct to be fired for cause.

122. During Plaintiff's employment with Ricoh, by their conduct, including their practices, policies, and policy application, Plaintiff understood that his employment would not be terminated unless he engaged in conduct that would justify being fired for cause.

123. During Plaintiff's employment with Ricoh, their practice was to rely on their progressive discipline policy and not to terminate the employment of individuals unless they engaged in conduct that justified immediate termination.

124. During Plaintiff's employment with Ricoh, while he carried out satisfactory work performance without issue, Ricoh continued his employment for fifteen years and, based on previous conduct and Ricoh's policies concerning termination, Plaintiff expected that employment to continue.

125. On July 10, 2020, Ricoh informed Plaintiff that *if* his performance was not satisfactory, *then* he would be subject to discipline, up to and including termination.

126. Plaintiff did not engage in any unsatisfactory performance between July 3, 2020 and the date Ricoh fired him.

127. Ricoh's conduct directly and proximately caused Plaintiff to suffer damages.

128. Ricoh's conduct was done with an evil motive or reckless disregard toward Plaintiff and his legal rights, making it liable for punitive damages.

WHEREFORE, Plaintiff prays for judgment against Ricoh on Count IV of his Complaint, for a finding that Ricoh violated Kansas law, for compensatory and punitive damages; equitable relief; costs; attorneys' and experts' fees provided; and other relief the Court deems fair and reasonable.

## COUNT V
### Tortious Interference with a Contract and Contractual Expectations
### Kansas Common Law
### (Against Deluxe)

129. Plaintiff incorporates by reference every other allegation in this Complaint.

130. Plaintiff had a contractual expectation of continued employment with Ricoh as alleged in Count IV.

131. Plaintiff had a business relationship and expectancy with Ricoh that included the probability of future economic benefit.

132. Deluxe knew of Plaintiff's business relationship and expectancy with Ricoh.

133. Except for Deluxe's conduct, Plaintiff was reasonably certain to continue in his business relationship and expectancy with Ricoh, thereby receiving the economic benefit associated with the relationship and expectancy.

134. Deluxe engaged in intentional misconduct that interfered with Plaintiff's business relationship and expectancy with Ricoh.

135. Deluxe's interference with Plaintiff's business relationship and expectancy with Ricoh was not justified.

136. Deluxe acted with a retaliatory motive in response to Plaintiff's acts of opposing Deluxe's nonchalant response to a potential COVID-19 outbreak and disclosing that his wife was at high-risk because of her disability.

137. Deluxe's conduct was reasonably calculated to produce a chilling effect on other individuals working inside Deluxe's facility who disagreed with Deluxe's nonchalant response to a potential COVID-19 outbreak and lack of mitigation efforts.

138. Deluxe's conduct directly and proximately caused Plaintiff to suffer damages.

139. Deluxe's conduct was done with an evil motive or reckless disregard toward Plaintiff and his legal rights, making Deluxe liable for punitive damages.

WHEREFORE, Plaintiff prays for judgment against Deluxe on Count V of his Complaint, for a finding that Deluxe violated Kansas law; for compensatory and punitive damages; equitable relief; costs; attorneys' and experts' fees provided; and other relief the Court deems fair and reasonable.

### COUNT VI
### Defamation
### Kansas Common Law
### (Against Deluxe)

140. Plaintiff incorporates by reference every other allegation in this Complaint.

141. Deluxe made false and defamatory statements to Ricoh about Plaintiff.

142. Deluxe's false and defamatory statements to Ricoh about Plaintiff caused damage to Plaintiff's reputation with Ricoh.

143. The false and defamatory statements to Ricoh were made by Matheny, an employee and agent of Deluxe, acting in the scope of his authority with Deluxe, making Deluxe liable for the false and defamatory statements.

144. Matheny knew the statements were false when he made them with the specific intent to cause Plaintiff's reputation and economic harm.

145. Deluxe's conduct directly and proximately caused Plaintiff to suffer damages, including reputational harm, emotional harm, and economic harm.

146. Deluxe's conduct was done with an evil motive or reckless disregard toward Plaintiff and his legal rights, making Deluxe liable for punitive damages.

WHEREFORE, Plaintiff prays for judgment against Deluxe on Count VI of his Complaint, for a finding that Deluxe violated Kansas law; for compensatory and punitive damages; equitable relief; costs; attorneys' and experts' fees provided; and other relief the Court deems fair and reasonable.

### JURY TRIAL DEMAND & DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby demands a jury trial in Kansas City, Kansas for all claims made herein.

*Respectfully Submitted by*,
**RALSTON KINNEY, LLC**

/s/ *Thomas F. Ralston*
Thomas F. Ralston, D.Kan. #78212
Kenneth D. Kinney, D.Kan. #78544
4717 Grand Avenue, Suite 250
Kansas City, Missouri 64112
Telephone: (816) 298.0086
Facsimile: (816) 298-9455
Email: tom@rklawllc.com
Email: ken@rklawllc.com

**ATTORNEYS FOR PLAINTIFF**